# IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY MARYLAND

PAMELA J. NUNZIO
10616 DEMOCRACY LANE
POTOMAC, MARYLAND 20854

        Plaintiff

V.                                      Case # 333965-V

COUNTRYWIDE BANK, N.A.
351 WEST CAMDEN ST
BALTIMORE, MARYLAND 21201

COUNTRYWIDE FINANCIAL CORPORTION
351 WEST CAMDEN ST
BALTIMORE, MARYLAND 21201

        Defendants

## AMMENDED COMPLAINT

COMES NOW, the Plaintiff Pamela J. Nunzio, in proper person, and amends this complaint pursuant to the Fair Credit Act of 1970, as amended, the Maryland Consumer Protection Act, Md. Code Ann., Com. Law 13-101, et seq. The Uniform Commercial Code and the Statutes of Frauds and Predatory Lending brings this action against the defendants Countrywide Bank, N.A. and Countrywide Financial Corporation.

## RECITALS

(A) Plaintiff, Pamela J. Nunzio, a Maryland resident was solicited to refinance her property at 10616 Democracy Lane Potomac Maryland on December 19th 2006 by Countrywide Bank, N.A.

(B) Plaintiff Nunzio's loan from Countrywide Bank, N.A. was a Pay Option Loan.

(C) Countrywide Financial Corporation, a Delaware Corporation is a Thrift Holding Company.

(D) On July 1st 2008 Bank of America Corporation, a Delaware Corporation announced that it had completed its purchase of Countrywide Financial Corporation. In connection with the acquisition, Bank of America announced that it would suspend offering sub prime or high cost mortgages as described in 15 U.S.C. 1602 (a) and non traditional forward mortgages (other than those that are Federal Eligible) that may result in negative amortization-such as Pay Option ARMs. Bank of America also stated that it would, for a time, place restrictions on offering "low documentation" and "no documentation" mortgage loans (other than those that are Federal Eligible) and set limits on mortgage broker compensation.

(E) Defendant Countrywide Financial Corporation, on January 29th 2009, stipulated to the Consent Judgment filed by the Maryland Consumer Protection Division of the Office of the Attorney General that they would no longer make loans described in paragraph (D).

(F) Plaintiff Nunzio's loan was a prohibited loan described in paragraphs (D and E). Bank of America Home Loans is a marketing brand engaged primarily in residential mortgage banking and related businesses. It formerly conducted business as Countrywide Financial, but the name was changed on April 27, 2009. Bank of America Home Loans is composed of Mortgage Banking, which originates purchases, securitizes, and services mortgages. In 2006 Countrywide financed 20% of all mortgages in the United States, at a value of about 3.5% of United States GDP, a proportion greater than any other single mortgage lender. Be it remembered that, Countrywide financed Plaintiff's Loan of December 19th 2006. On January 11, 2008, Bank of America announced that it planned to purchase Countrywide Financial for $4.1 billion in stock. On June 5, 2008, Bank of America Corporation announced it had received approval from the Board of Governors of the Federal Reserve System to purchase Countrywide Financial Corporation. Then, on June 25, 2008, Countrywide announced it had received the approval of 69% of its shareholders to planned merger with Bank of America. On July 1, 2008, Bank of America Corporation completed its purchase of Countrywide Financial Corporation. In 1997, Countrywide had spun off Countrywide Mortgage Investment as an independent company called IndyMac Bank. Federal regulators seized IndyMac on July 11, 2008, after a week-long bank run.

(G) On information and belief of the Plaintiff, Countrywide was not a licensed mortgage lender on December 19, 2010, therefore under Maryland Law the mortgage instrument is void.

(H) The Defendats were served with Plaintiff's original complaint forty-five minutes prior to the sale. The Defendants continued on with the sale and failed to address the substantive

legal issues including the illegal mortgage and illegal loan product specified in the Plaintiff's complaint.

(I) The Plaintiff was unaware that the fraud had occured until June 15, 2010, therefore the Defendants allegations are not time barred.

(J) Defendants reserves the right to amend this action at any time prior to trial.

1. On September 13, 2006 the Plaintiff Nunzio purchased the property financed by New Century Mortgage Company and on December 20, 2006 refinanced the property with Countrywide Bank,N.A. with the aforementioned prohibited loan product.

2. In the first quarter of 2008, after making over Forty Five Thousand Dollars in payments, Plaintiff Nunzio went into arrears on payments, due to the down turn in the economy coupled with a difficult divorce.

3. Plaintiff phoned Countrywide Bank,N.A. and notified them of the existing financial hardship caused by an extreme reduction in pay and difficult divorce. Plaintiff asked the defendant to modify loan or offer a moratorium on payments until the divorce settled. Countrywide told Plaintiff Nunzio not to make any payments stating that Plaintiff was only in pre foreclosure and that in a few months Plaintiff could send a hardship letter that would serve a defacto modification request.

4. During May 2008, Plaintiff Nunzio complied, told Countrywide of situation and asked for a modification, Countrywide stated in phone conversation that Plaintiff did not qualify and needed to make a payment in full of arrears in addition to attorney's fees to stop foreclosure. This action violated Fair Credit Act of 1970, as amended, the Maryland Consumer Protection Act, Md. Code Ann., Com. Law 13-101, et seq. the Uniform Commercial Code and the Statutes of Frauds.

5. On September 19th 2008, Countrywide through its attorneys, and substitute trustees for case number 304016V, filed November 10th 2009 and dismissed on January 20th 2010, Bierman, Geesing and Ward, sent a letter demanding payment in full including interest, late charges and other excessive charges exceeding Eighty Six Thousand Six Hundred Dollars in violation of the Fair Credit Act of 1970, as amended, the Maryland Consumer Protection Act, Md. Code Ann., Com. law 13-101, et seq. the Uniform Commercial Code and the Statutes of Frauds.

6. On or about September 21, 2008, Plaintiff's Divorce Attorney Jonathan Isaacs, explained to the Countrywide collection department that the Plaintiff had an eminent settlement in her

divorce case, with in the next two weeks. The collection department demanded immediate settlement or that Countrywide would sell the property within two weeks that would cause the Plaintiff to be evicted as early as one and a half hours after the court sale date and time or as much as 30 days depending upon the state of Plaintiff's residence. Be it remembered, that case 304016V was not filed until November 10th 2009, yet, the Countrywide's Collection Department was making Terroristic Threats on the Plaintiff Nunzio in violation of the Fair Credit Act of 1970, as amended, the Maryland Consumer Protection Act ,Md. Code Ann., Com. law 13-101, et seq. The Uniform Commercial Code and the Statutes of Frauds.

7. Plaintiff sent numerous Hardship Letters to Countrywide from November 21st 2008 till May 16th 2009.

8. On December 16th 2008, Countrywide's Attorneys, Bierman, Geesing and Ward, sent a letter to the Plaintiff, advising Plaintiff that the sale scheduled for January 7th 2009 had been cancelled due to a workout plan.

9. With the knowledge that Countrywide was subject to a cease and desist for violation of the Fair Credit Act of 1970, as amended, the Maryland Consumer Protection Act ,Md. Code Ann., Com. law 13-101, et seq. The Uniform Commercial Code and the Statutes of Frauds. During that time period, Countrywide set at least four Foreclosure Sale Dates, that were subsequently cancelled. These events caused serious emotional trauma to the Plaintiff.

10. On December 17th 2009 the Plaintiff received a Payment Adjustment notice Defendants setting the monthly payment to Two Thousand Four Hundred Fifty Dollars and Seventy Nine cents, Plaintiff sent the February 1st Payment on January 15th 2010, the March 1st Payment on February 15th 2010 and the April 1st payment on March 15th 2010, those checks were never cashed or returned to the Plaintiff.

11. Countrywide, the nation's largest lender and loan servicer, was acquired by Bank of America, had been sued by the states over what they said were predatory lending practices such as Plaintiff's Pick and Pay Loan. To settle suits, it provide $8.4 billion in direct loan relief, affecting an estimated 400,000 borrowers nationwide, Plaintiff was on of the 400,000 borrowers nationwide, as described in paragraph 10. "Countrywide's greed turned the American dream into a nightmare for thousands of Californians who now face foreclosure," said Jerry Brown, the attorney general of California. He led the negotiations for the states with Lisa Madigan, the Illinois attorney general. "Our goal here is to help as many people stay in their homes as possible and get some compensation for those who have already been pushed out of their homes," he said. Mr. Brown expects loans worth $3.4 billion to be modified in California, where homeowners have been hit hard in the housing bust. The Congress has proposed various programs, but those measures did not make it into the final $700 billion government bailout. Since taking control of Fannie and Freddie Mac, the two

housing giants, the Federal Housing Finance Agency has said it is looking at expanding modifications on the loans that Fannie and Freddie own or guarantee. After seizing IndyMac, the Federal Deposit Insurance Corporation began a loan modification program that it said could be a template in other takeovers. The agency hopes to help tens of thousands of borrowers whose interest rates are being reset higher in the early stages of that program. It is encouraging people who have fallen severely behind on their payments or who have defaulted to switch into a fixed-rate mortgage at current rates of about 6 percent. Countrywide has made pledges before to modify large swaths of loans. Late last year, it vowed to help about 82,000 borrowers who were facing higher payments through 2008. But the new program will be mandatory and will be monitored by state officials. Along with the direct relief, Countrywide will waive late fees of $79 million and prepayment penalties of $56 million and suspend foreclosures on delinquent borrowers with the riskiest loans. Plaintiff was promised and her foreclosure was suspended three times. On December 17th 2009 the Plaintiff received a Payment Adjustment notice setting the monthly payment to Two Thousand Four Hundred Fifty Dollars and Seventy Nine cents, Plaintiff sent the February 1st Payment on January 15th 2010, the March 1st Payment on February 15th 2010 and the April 1st payment on March 15th 2010, those checks were never cashed or returned to the Plaintiff. "We have worked with attorneys general across the country to resolve the issues relating to Countrywide's practices," Mr. Mahoney said. "Bank of America has put our own leadership in charge of Countrywide and have committed to a very different set of business practices going forward." Countrywide settled with the states without admitting any wrongdoing. Under the terms of the settlement, Countrywide will reduce principal balances in some cases and cut interest rates in others. Rates could decline to 2.5 percent, depending upon a borrower's ability to pay, and remain at that level for five years. Then the rate will adjust to prevailing interest rates charged by Fannie Mae on its fixed-rate mortgages. The program will focus on borrowers who were placed in the riskiest loans, including adjustable-rate mortgages whose interest rates reset significantly several years after the loans were made. Pay-option mortgages, under which a borrower must pay only a small fraction of the interest and principal, thereby allowing the loan balance to increase, are also included in the modifications. Borrowers whose first payment was due between Jan. 1, 2004, and Dec. 31, 2007, can participate. The loan balance must be at least 75 percent of the current value of the home, and the borrower must be able to afford the adjusted monthly payments. "We have created the first comprehensive, mandatory loan-modification program with the largest loan servicer in the country, and it is going to help homeowners stay in their homes," Ms. Madigan said. "We will use this model when we work with other servicers as well." She said that approximately $185 million worth of loans in Illinois would be modified under the settlement. Illinois had accused Countrywide of relaxing underwriting standards, structuring loans with risky features, and misleading consumers with hidden fees and fake marketing claims, like its "no closing costs loan." Countrywide also created incentives for its employees and brokers to sell questionable loans by paying them more on such sales, the complaint said. In reviewing one Illinois mortgage broker's sales of Countrywide loans, the

complaint said the "vast majority of the loans had inflated income, almost all without the borrower's knowledge." Other states in the settlement are Arizona, Connecticut, Florida, Iowa, Michigan, North Carolina, Ohio, Texas and Washington. It is the largest predatory lending settlement in history, far exceeding the $484 million deal struck in 2002 with the Household Finance Corporation." This agreement demonstrates the effectiveness of states in addressing predatory lending and other consumer protection matters, proving states should not be pre-empted by federal legislation," said Mr. Brown. Despite Bank of America's promises of all the above and with the actions of the Plaintiff as described in paragraph 10, the Defendants was foreclosed June 16th 2010.

12. On April 20th 2010, the Defendant filed a new Foreclosure case number 330716V

13. The property located at 10616 Democracy Lane was sold on June 16th 2010 in violation of the Fair Credit Act of 1970, as amended, the Maryland Consumer Protection Act, Md. Code Ann., Com. law 13-101, et seq. the Uniform Commercial Code and the Statutes of Frauds and Predatory Lending.

WHEREFORE, premises considered and with numerous violations by Countrywide of the Fair Credit Act of 1970, as amended, the Maryland Consumer Protection Act, Md. Code Ann., Com. law 13-101, et seq. the Uniform Commercial Code and the Statutes of Frauds and Predatory Lending.

THEREFORE, It is the prayer of the Plaintiff, that this Court orders that the June 16th 2010 Sale of the property be set aside, and that the Court nullify the illegal mortgage of the Plaintiff and order the Defendants pay jointly and severally Forty Five Thousand Dollars in actual damages, and One Hundred Thirty Five Thousand Dollars in punitive damages and any other award deemed necessary to enforce justice.

August 6, 2010

Respectfully submitted,

*Pamela J. Nunzio* (signature)
Pamela J. Nunzio
10616 Democracy Lane
Potomac MD. 20854
301-325-1186